# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL NAPOLI, | : |
| **Plaintiff,** | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 18-2993 |
| GREENWOOD GAMING AND ENTERTAINMENT, INC. d/b/a PARX CASINO, | : |
| **Defendant.** | : |

## MEMORANDUM

Tucker, J.                                                                                                                        November 25, 2019

Before the Court is Defendant Greenwood Gaming and Entertainment, Inc.'s Motion for Summary Judgement (ECF Nos. 15,18) and Plaintiff Michael Napoli's Response in Opposition (ECF No. 16). Defendant argues that Plaintiff's request for an indefinite leave of absence did not constitute a reasonable accommodation defined by the Americans with Disabilities Act ("ADA"). Thus, Defendant's denial of Plaintiff's request and subsequent termination of employment, was not a violation of the ADA nor the Pennsylvania Human Relations Act ("PHRA"). For the foregoing reasons, Defendant's Motion is DENIED.

### I.    STATEMENT OF FACTS

Plaintiff Michael Napoli worked as a part-time tables dealer for Defendant Greenwood Gaming and Entertainment, Inc., starting August 22, 2016. Pl.'s Resp. In Opp'n 1, ECF No. 16. In January 2017, Plaintiff was diagnosed with diastolic heart failure and underwent a left and right heart catheterization procedure. Pl.'s Resp. In Opp'n Mem. 2. The procedure was

unsuccessful; within six hours of surgery Plaintiff lost feeling in his right arm. Plaintiff was subsequently diagnosed with Deep Vein Thrombosis. Pl.'s Resp. In Opp'n Mem. 2.

During a January 25, 2017 appointment, Plaintiff alleges that his vascular doctor informed him that he needed seven (7) to eight (8) weeks off work. Pl.'s Resp. In Opp'n Mem. 2. Plaintiff further alleges that the doctor provided a doctor's note attesting to his need for time off; the doctor would reassess Plaintiff's condition at a follow-up appointment. Pl.'s Resp. In Opp'n Mem. 2. After his surgery, Plaintiff returned to work and attempted to meet with human resources. Pl.'s Resp. In Opp'n Mem. 2. An HR employee, Rebecca Carr, directed Plaintiff to his supervisor, Johanna Belanger. Pl.'s Resp. In Opp'n Mem. 2. When Plaintiff approached Belanger's office, she stated "I don't want to see it," referring to Plaintiff's doctor's note. Pl.'s Resp. In Opp'n Mem. 2. Plaintiff explained to Belanger that he needed time off work. Pl.'s Resp. In Opp'n Mem. 2. Belanger initially stated that she could not accommodate Plaintiff, but subsequently stated that she could. Pl.'s Resp. In Opp'n Mem. 2. Later that day, Plaintiff called Belanger to discuss his request. Pl.'s Resp. In Opp'n Mem. 2. Plaintiff did not speak to Belanger, but another employee told Plaintiff that his request could not be accommodated, and he needed to resign. Pl.'s Resp. In Opp'n Mem. 2.

On January 30, 2017, Plaintiff followed up, via email, with Carr to check the status of his leave request. Pl.'s Resp. In Opp'n Mem. 4. Carr forwarded the email to Plaintiff's supervisor, director of human resources, Susan Eckert. Pl.'s Resp. In Opp'n Mem. 4. Carr stated that Plaintiff did not qualify for any type of leave because he had worked for Defendant for less than one year.[1] Defs.' Summ. J. Mem. 3, ECF No. 15. Carr acknowledged that Belanger allowed

---

[1] Plaintiff did not qualify for medical leave under the Family and Medical Leave Act ("FMLA"). FMLA allows employees to take unpaid, job-protected, time off for certain family and medical reasons. Pursuant to the FMLA, an employee must work 1,2509 hours during a twelve-month

exceptions for employees in Plaintiff's situation when their requests did not exceed four weeks. Pl.'s Resp. In Opp'n Mem. 4. On February 8, 2017, Belanger emailed Eckert and Carr asking if Defendant could proceed with Plaintiff's termination because he needed more than six weeks off and did not qualify for FMLA leave. Pl.'s Resp. In Opp'n Mem. 5. Eckert explained that Plaintiff needed to resign and should inform Defendant when he was ready to return. Pl.'s Resp. In Opp'n Mem. 5. Belanger stated that she informed Plaintiff multiple times that he needed to resign, but he refused. Pl.'s Resp. In Opp'n Mem. 5.

In a February 8, 2017 email to Plaintiff, Carr informed Plaintiff that he did not qualify for any type of leave and would be made inactive in Defendant's system. Pl.'s Resp. In Opp'n Mem. 7. Inactive status amounts to termination. Pl.'s Resp. In Opp'n Mem. 7. Plaintiff did not reapply to work for Defendant because "he believed that Defendant did not value him as a person." Pl.'s Resp. In Opp'n Mem. 7.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party may motion for summary judgment if "there is no dispute as to any material fact and the moving party is entitled to judgment and a matter of law." Fed. R. Civ. P. 56(a). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, the opposing party "may not rest upon the mere allegations or denials of his pleading, but . . . must

---

period immediately preceding his request for leave under the act. 29 C.F.R. § 825.110. When Plaintiff requested time off, he was working for Defendant for approximately five (5) months. Defendant has a leave of absence policy for employees that do not qualify for FMLA leave but have been employed for at least one year. Pl.'s Resp. In Opp'n 3. Employees may be eligible to take time away from work for family and medical leaves, jury and witness duty, military, or bereavement. Pl.'s Resp. In Opp'n 3.

set forth specific facts showing that there is a genuine issue for trial." *Id*. (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

**III.     ANALYSIS**

Plaintiff presents two claims: (1) discrimination and retaliation in violation of the ADA, and (2) discrimination and retaliation in violation of the PHRA. ADA and PHRA claims are analyzed under the same standard—Title VII of the Civil Rights Act of 1964—as such, a joint analysis will follow. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (Analyzing ADA claims under the same analysis for claims arising under Title VII); *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) ("Generally, the PHRA is applied in accordance with Title VII of the Civil Rights Acts of 1964.").

**A.  ADA and PHRA Discrimination Claims**

The ADA prohibits an employer from discriminating against an individual with a disability regarding hiring, termination and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). To establish a prima facie ADA discrimination claim, an employee must demonstrate that (1) he is a disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job; (3) and he suffered an adverse employment action. *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). If the plaintiff proves these elements, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its decision to terminate plaintiff. *Id.* at 614. If the defendant meets this burden, the burden again shifts to the plaintiff to show that defendant's proffered reasons are not true and were a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973). This is known as the *McDonnell Douglas* burden shifting framework. *Id.* The Parties agree that Plaintiff is disabled and that he suffered an adverse employment action.

*See* Def.'s Summ. J. Mem, ECF No. 15; Pl.'s Resp. In Opp'n Mem. Accordingly, the Court's analysis will solely cover element two, whether Plaintiff was otherwise qualified to perform the essential functions of his job.

### 1. Plaintiff is a qualified individual as defined by the ADA

A qualified individual, as defined by the ADA is one, "who, with or without *reasonable accommodation*, can perform the essential functions of the employment position that [he] holds or desires." 42 U.S.C. § 12111(8) (emphasis added). A reasonable accommodation is a "modification or adjustment to the work environment, or to the matter or circumstances under which the position held is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii). An employer violates the ADA if it is aware of an employee's physical limitations and does not make a reasonable accommodation. 29 C.F.R. § 1630.9(a).

Defendant argues that Plaintiff was not a qualified individual under the ADA because he requested indefinite leave. Def.'s Summ. J. Mem. 5–9. Indefinite leave, Defendant asserts, does not constitute a reasonable accommodation. Def's Summ. J. Mem. 7. Plaintiff agrees with Defendant's assertion. Pl.s Res. In Opp'n Mem. 10. However, Plaintiff argues that he did not request an indefinite and open-ended leave; he requested a finite period of seven (7) to eight (8) weeks. Pl.'s Resp. In Opp'n 11. The Third Circuit has held that indefinite and open-ended leave is inherently unreasonable. *Conoshenti v. Public Service Electric & Gas Co*., 364 F.3d 135 (3d Cir. 2004). Leave must enable the employee to perform the essential functions of his job in the near future. *Id.* at 151. Indefinite and open-ended leave does not assure such outcome. *Fogleman v. Greater Hazleton Health Alliance*, 122 Fed.Appx. 581, 585 (3d Cir. 2004). In contrast, a finite period of leave, in some instances, is considered a reasonable accommodation. *Id.*

Plaintiff's request for definite leave—seven to eight weeks—constitutes a reasonable accommodation. Defendant argues that Plaintiff's request was indefinite because Plaintiff's doctor's report stated that Plaintiff should return for an evaluation after four months. Def.'s Summ. J. Mem. 7, Ex. F Progress Notes, ECF No. 15. At the time of his request, Defendant had no reason to believe that Plaintiff needed more than seven to eight weeks off. Defendant learned of Plaintiff's follow-up appointment with his doctor after this suit was initiated. Defendant does not cite to evidence that at the time it denied Plaintiff's request, it knew of Plaintiff's follow-up appointment with his doctor, and that Plaintiff's doctor required Plaintiff to not work for at least four months. The evidence shows that Plaintiff informed Defendant, that per his doctor's orders, he needed seven to eight weeks leave. The extent of Defendant's inquiry into Plaintiff's leave request included determining the reason for Plaintiff's disability. Pl.'s Resp. In Opp'n Ex. F, ECF No. 21-5. Defendant's sole reason for denying Plaintiff's request for leave was that Plaintiff "needed 6+ weeks off and did not qualify for FMLA," not that Plaintiff requested an indefinite leave. Pl.'s Resp. In Opp'n 5. Plaintiff's request was for a finite period, leave was a reasonable accommodation, and it follows that Plaintiff would have been able to perform the essential functions of his job in the near future.

### 2. Defendant's engagement in an interactive process is a genuine issue of a material fact

The ADA explicitly encourages the employer and the employee to search for an appropriate, reasonable accommodation. Once the employee puts the employer on notice of his request, the employer should "initiate an interactive process" to identify the employee's precise limitations. 29 C.F.R. § 1630.2(o)(3); *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 318–319 (3d Cir. 1999). If an employer fails to engage in the interactive process, and thus fails to accommodate the employee, the employee must show that:

> (1) the employer knew about the employee's disability;
> (2) the employee requested accommodations or assistance for his or her disability;
> (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and
> (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Taylor*, 184 F.3d at 319–20. An employer can show that it engaged in an interactive process, in good faith, by showing that it spoke with the employee about his medical condition, his limitation, and his specific requests. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

It is undisputed that Defendant was on notice of Plaintiff's request for seven to eight weeks leave. Defendant does not argue that it engaged in an interactive process, and the record is devoid of such evidence. As discussed above in II.A.1., Defendant's inquiry into Plaintiff's request included confirming Plaintiff's medical condition.

Prior to its denial of Plaintiff's leave and subsequent termination, Defendant should have engaged in an interactive process to determine Plaintiff's specific request and limitations. Defendant's participation in an interactive process, to determine an appropriate reasonable accommodation for Plaintiff, is a genuine issue of material fact. Accordingly, summary judgment on Plaintiff's ADA and PHRA discrimination claims is denied.

### B. ADA And PHRA Retaliation Claims

To establish a prima face case of retaliation under the ADA, Plaintiff must show that (1) he is a protected employee, (2) he suffered an adverse employment action after or contemporaneous with a protected activity, and (3) there was a causal connection between the protected activity and the adverse action. *Krouse*, 126 F.3d at 500. It is undisputed that Plaintiff is a protected employee and suffered an adverse employment action. Element three—causal connection between the protected activity and adverse action—remains at issue.

Defendant does not argue that it terminated Plaintiff after he requested leave—a protected activity. Defendant argues that Plaintiff was terminated for "his failure to show up for work." Def.'s Reply Mem. 5, ECF No. 18. However, evidence on the record shows that Defendant concluded that Plaintiff's request for leave could not be granted because he requested more than six weeks off. Johanna Belanger Dep. 23:11–19, ECF No. 16-6. The contrasting reasons for Plaintiff's termination present a material issue of fact. Accordingly, summary judgment on Plaintiff's ADA and PHRA retaliation claims is denied.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion is DENIED. An appropriate Order follows.